CAVANAGH, J.
We granted leave to appeal to determine whether the amendatory provision in the compacts at issue and the exercise of that provision by the Governor violate the Separation of Powers Clause of the Michigan *103 Constitution. 474 Mich 1097 (2006).[1] We hold that the amendatory provision and the exercise of that provision do not violate the Separation of Powers Clause because the amendatory provision was properly approved by legislative resolution and the Governor’s exercise of the amendatory provision was within the limits of the constitution. Further, we hold that the issue whether the compacts violate the Appropriations Clause of the Michigan Constitution is not properly before this Court because the issue is beyond the parameters of this Court’s prior order remanding this matter to the Court of Appeals. Thus, we reverse in part the judgment of the Court of Appeals and hold that the amendatory provision and the current exercise of that provision do not violate the Separation of Powers Clause. We further affirm in part the judgment of the Court of Appeals that struck the portion of plaintiffs brief that sought to address the Appropriations Clause issue. Accordingly, we remand this case to the circuit court for the entry of a judgment of summary disposition in favor of defendants.
I. STATEMENT OF FACTS AND PROCEEDINGS
In January 1997, Governor John Engler and four Indian tribes signed tribal gaming compacts. The four tribes were the Little Traverse Bay Bands of Odawa Indians, the Pokagon Band of Potawatomi Indians, the Little River Band of Ottawa Indians, and the Nottawaseppi Huron Potawatomi. In Taxpayers of Michigan *104 Against Casinos v Michigan, 471 Mich 306; 685 NW2d 221 (2004) (TOMAC I), this Court considered three aspects of the alleged unconstitutionality of these tribal gaming compacts between the state and the tribes. This Court affirmed the Court of Appeals judgment, 254 Mich App 23; 657 NW2d 503 (2002), that held that the compacts were properly approved by the Legislature through a resolution, rather than a bill; that this did not violate art 4, § 22 of the Michigan Constitution; and that the resolution was not a “local act” in violation of art 4, § 29 of the Michigan Constitution. However, this Court also held that the question whether the amendatory provision in the compacts was constitutional under the Separation of Powers Clause, Const 1963, art 3, § 2, was not ripe for review because the Court of Appeals had not considered the issue. Governor Jennifer Granholm’s exercise of the amendatory authority had not occurred until after the Court of Appeals decision. Thus, this Court remanded the matter to the Court of Appeals to determine whether the amendatory provision violates the separation of powers doctrine.
On remand, the Court of Appeals held that the compacts’ amendatory provision, which allows the Governor to amend the compacts without legislative approval, violates the Separation of Powers Clause. Taxpayers of Michigan Against Casinos v Michigan (On Remand), 268 Mich App 226, 228; 708 NW2d 115 (2005). Judge BORRELLO dissented and stated that the Separation of Powers Clause was not violated because the Legislature’s approval of the compacts included approval of the amendatory provision.
II. STANDARD OF REVIEW
This Court reviews de novo a decision regarding a motion for summary disposition. Herald Co v Bay City, *105 463 Mich 111, 117; 614 NW2d 873 (2000). This Court also reviews constitutional issues de novo. Harvey v Michigan, 469 Mich 1, 6; 664 NW2d 767 (2003). Decisions involving the meaning and scope of pleadings are reviewed for an abuse of discretion. Dacon v Transue, 441 Mich 315, 328; 490 NW2d 369 (1992).
III. ANALYSIS
Under the Indian Gaming Regulatory Act (IGRA), 25 USC 2701 et seq., an Indian tribe may conduct gaming within the borders of a state if the activity conforms to a compact between the state and the tribe. The compacts at issue were signed by Governor Engler, and the Legislature approved the compacts by resolution. In 2003, Governor Granholm consented to an amendment of the compact with the Little Traverse Bay Bands of Odawa Indians.
A. SEPAEATION OF POWERS CLAUSE
Michigan’s Separation of Powers Clause states: “The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.” Const 1963, art 3, § 2. “This Court has established that the separation of powers doctrine does not require so strict a separation as to provide no overlap of responsibilities and powers.” Judicial Attorneys Ass’n v Michigan, 459 Mich 291, 296; 586 NW2d 894 (1998). An overlap or sharing of power may be permissible if “the grant of authority to one branch is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other . . ..” Id. at 297. The Separation of Powers Clause “has not been interpreted to mean that *106 the branches must be kept wholly separate.” Soap & Detergent Ass’n v Natural Resources Comm, 415 Mich 728, 752; 330 NW2d 346 (1982).
The amendatory provision at issue provides:
Section 16. Amendment
This Compact may be amended by mutual agreement between the Tribe and the State as follows:
(A) The Tribe or the State may propose amendments to the Compact by providing the other party with written notice of the proposed amendment as follows:
(i) The Tribe shall propose amendments pursuant to the notice provisions of this Compact by submitting the proposed amendments to the Governor who shall act for the State.
(ii) The State, acting through the Governor, shall propose amendments by submitting the proposed amendments to the Tribe pursuant to the notice provisions of this Compact.
(iii) Neither the tribe nor the State may amend the definition of “eligible Indian lands” to include counties other than those set forth in Section 2(B)(1) of this Compact....
(B) The party receiving the proposed amendment shall advise the requesting party within thirty (30) days as follows:
(i) That the receiving party agrees to the proposed amendment; or
(ii) That the receiving party rejects the proposed amendment as submitted and agrees to meet concerning the subject of the proposed amendment.
(C) Any amendment agreed to between the parties shall be submitted to the Secretary of the Interior for approval pursuant to the provisions of the IGRA.
*107 (D) Upon the effective date of the amendment, a certified copy shall be filed by the Governor with the Michigan Secretary of State and a copy shall be transmitted to each house of the Michigan Legislature and the Michigan Attorney General. [Emphasis added.]
Governor Granholm and the Little Traverse Bay Band of Odawa Indians agreed to amend the compact in a number of ways. Among other items, the amendment permitted a second casino to be constructed on eligible Indian lands of the Little Traverse Bay Bands of Odawa Indians, contingent on the approval of the local unit of government; changed the age of legal gambling from 18 to 21 at this casino; mandated that tribal payments must now be sent to the state, as directed by the Governor or a designee of the Governor, as opposed to sending the payments to the Michigan Strategic Fund or its successor; and mandated that the compact was binding for 25 years from the effective date of the amendments, instead of being binding for 20 years from the effective date of the compact.
The amendatory provision allows the Governor to act for the state in reviewing and approving amendments submitted by the tribes and in proposing amendments to the tribes. This amendatory provision expresses the bilateral agreement between the parties that the Governor will represent the state in matters involving amendments. The Legislature reviewed the language of this amendatory provision and approved the amendment procedure, which gives the Governor broad discretion — within the limits of the constitution — to amend the compacts.
The compacts were properly approved by legislative resolution.[2] As stated in TOMAC I, “our Constitution *108 does not require that our Legislature express its approval of these compacts through bill rather than resolution.” TOMAC I, supra at 313. The compacts— when approved by the Legislature — included the amendatory provision. As this Court held in TOMAC I, supra at 313, a resolution was sufficient for legislative approval of the compacts. Similarly, the resolution also amounted to sufficient approval for the amendatory provision within the compacts.
The Legislature’s approval of the amendatory provision gave consent to amendments that conform to the approved procedure. The Legislature chose to approve an amendment procedure that gives the Governor broad power to amend the compacts, and the Legislature was well within its authority to make such a decision. See id. at 329. This Court has long recognized the ability of the Legislature to confer authority on the Governor. See, e.g., People ex rel Sutherland v Governor, 29 Mich 320, 329 (1874). This Court has further recognized that discretionary decisions made by the Governor are not within this Court’s purview to modify. See, e.g., People ex Rel Ayres v Bd of State Auditors, 42 Mich 422, 426; 4 NW 274 (1880).[3] *3
*109 As this Court stated in TOMAC I, supra at 328, “We have held that our Legislature has the general power to contract unless there is a constitutional limitation.” There is no limitation in Michigan’s Constitution on the Legislature’s power to bind the state to a compact with a tribe. “State legislatures have no regulatory role under IGRA aside from that negotiated between the tribes and the states.” Id. at 320. The Legislature’s approval of the compacts only follows the assent of the parties to the compacts. This does not establish, “in the realm of Indian casinos, ‘government by contract’ ” that avoids the restrictions and provisions of the constitution, as argued by Justice MARKMAN. Post at 134. The amendments — -just as the compacts themselves — “only set forth the parameters within which the tribes, as sovereign nations, have agreed to operate their gaming facilities.” TOMAC I, supra at 324. Our constitution does not prohibit the Legislature from approving compacts by concurrent resolution. Id. at 327-328. Thus, it is entirely permissible for the Legislature to provide, by resolution, that the Governor may negotiate subsequent amendments to the compacts. Because the agreed-to amendments are permissible, plaintiff has failed to establish that the amendatory provision and the exercise of that provision are unconstitutional. The amendatory provision survives both a facial and an as-applied challenge under the Separation of Powers Clause because all the amendments negotiated by the Governor are permissible. See Judicial Attorneys Ass’n, supra at 303; Woll v Attorney General, 409 Mich 500, 535 n 50; 297 NW2d 578 (1980). Specifically, the amendments “do not impose new obligations on the citizens of the state subject to the Legislature’s power; they simply reflect the contractual terms agreed to by two sovereign entities.” TOMAC I, supra *110 at 327;[4] see also TOMAC I, supra at 344 (KELLY, J., concurring) (The compacts “place no restrictions or duties on the people of the state of Michigan. They create no duty to enforce state laws on tribal lands.”).
Finally, today’s decision is not in conflict with this Court’s past decision in Roxborough v Unemployment Compensation Comm, 309 Mich 505; 15 NW2d 724 (1944). In Roxborough, supra at 510, this Court stated that the Governor could “exercise only such authority as was delegated to him by legislative enactment.” This Court held that the Governor could not increase compensation for an employee of the appeal board of the Unemployment Compensation Commission because the Legislature had passed legislation to limit the compensation of this employee to the maximum amount permitted by the Social Security Board. The Governor could not ignore this limitation. Roxborough is inapplicable because that case dealt with a unilateral act of the Legislature. The compacts, however, are bilateral agreements. Further, the Legislature’s approval by resolution of the compacts — which included the amendatory provision — provides the Governor with authority to negotiate and agree to amendments on behalf of the *111 state. Thus, the amendatory provision — on its face and as it was exercised by the Governor — does not violate the Separation of Powers Clause of the Michigan Constitution.
B. APPROPRIATIONS CLAUSE
Michigan’s Appropriations Clause states, “No money shall be paid out of the state treasury except in pursuance of appropriations made by law.” Const 1963, art 9, § 17. On remand in the Court of Appeals, plaintiff argued that the compacts violate Michigan’s Appropriations Clause because this Court determined that the compacts are contracts. Plaintiff argued that consideration must have been exchanged by the parties to each compact. Therefore, the tribal payments under the compacts are state funds that the Legislature must appropriate by legislation. Plaintiff raised this issue for the first time in the Court of Appeals when this case was remanded, and plaintiff argued that the issue was within the scope of this Court’s remand order and could not have been raised earlier because it was based on this Court’s ruling in TOMAC I. Intervening defendant Gaming Entertainment, LLC, moved to strike the portion of plaintiffs brief dealing with the Appropriations Clause because the issue went beyond this Court’s remand order. The Court of Appeals granted the motion to strike and, thus, did not address this issue.
We agree with the Court of Appeals that the appropriations issue was not properly before it. This Court remanded this matter to the Court of Appeals to address a specific issue — “whether the provision in the compacts purporting to empower the Governor to amend the compacts without legislative approval violates the separation of powers doctrine found in Const 1963, art 3, § 2.” TOMAC I, supra at 333. The appro *112 priations issue is outside the scope of this Court’s remand order; thus, the Court of Appeals correctly held that the issue was not properly before it. See, e.g., Napier v Jacobs, 429 Mich 222, 228; 414 NW2d 862 (1987); People v Jones, 394 Mich 434, 435-436; 231 NW2d 649 (1975). Plaintiff cannot raise any issue it chooses merely because this Court remanded this case to the Court of Appeals to address another issue. Simply, if this Court had not remanded the matter to the Court of Appeals to address the separation of powers issue, plaintiff would not be able to raise a new issue directly in the Court of Appeals. Similarly, plaintiff cannot do so now.
IV CONCLUSION
We hold that the amendatory provision and the Governor’s exercise of that provision do not violate the Separation of Powers Clause because the amendatory provision was properly approved by legislative resolution and the Governor’s use of the amendatory provision was exercised within the limits of the constitution. Thus, we reverse in part the judgment of the Court of Appeals and hold that the amendatory provision and the current exercise of that provision do not violate the Separation of Powers Clause. We further hold that the issue whether the tribal payments under the compacts violate the Appropriations Clause of the Michigan Constitution is not properly before this Court because it is beyond the parameters of this Court’s prior remand order. Thus, we affirm in part the judgment of the Court of Appeals that struck the portion of plaintiffs brief that sought to address the Appropriations Clause issue. Accordingly, we remand this case to the circuit court for entry of a judgment of summary disposition in favor of defendants.
*113 Taylor, C.J., and Kelly, Corrigan, and Young, JJ., concurred with CAVANAGH, J.

 We note that while Laura Baird is a named plaintiff in this case, she has been inactive during the appellate process. In fact, Baird filed a motion with the Court of Appeals asking that she be dismissed as a party. While this motion was denied, her inactivity has rendered the issue of standing as it relates to legislators moot. Accordingly, the term “plaintiff” when used in this opinion only refers to plaintiff Taxpayers of Michigan Against Casinos.

 While Justice Markman again revisits his arguments that the compacts were legislation under Blank v Dep’t of Corrections, 462 Mich 103; *108 611 NW2d 530 (2000), this Court already explained its position and addressed the flaws in Justice Markman’s rationale in TOMAC I, supra at 318-333; thus, there is no reason to reiterate this reasoning. Further, Justice Markman’s discussion that MCL 432.203(5) suggests that casino gaming must be authorized by legislation in the absence of a compact is irrelevant here because there is a compact in this case in accord with IGRA and the compact properly allows for amendments.

 Contrary to Justice Markman’s claims, we note that the Governor’s authority to negotiate amendments is not without limits. Some limits are in the compacts themselves, and the Governor cannot negotiate amendments that extend beyond these limits. And, of course, the Governor cannot agree to an amendment that would violate the constitution or invade the Legislature’s lawmaking function.

 Justice Markman is simply incorrect when he states that the fact that the amendments reflect the contractual terms agreed to by two sovereign nations is “irrelevant to the necessary constitutional analysis.” Post at 145. As thoroughly explained in TOMAC I, supra at 324, “the hallmark of legislation is unilateral imposition of legislative will. Such a unilateral imposition of legislative will is completely absent in the Legislature’s approval of tribal-state gaming compacts under IGRA.” Thus, the Legislature’s role in approving the compacts and amendatory provision “requires mutual assent by the parties — a characteristic that is not only the hallmark of a contractual agreement but is also absolutely foreign to the concept of legislating.” Id. Justice Markman’s dissent is largely premised on the notion that the compacts and the amendments constitute legislation; thus, it is perplexing why a statement showing the contrary is irrelevant to the analysis.